## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JILL COLLEEN JEFFERSON**                                    **Plaintiff,**

                                                     **Case No. 3:25-cv-347-HTW-LGI**

**v.**

**CITY OF LEXINGTON, SCOTT**                                  **Defendants**
**WALTERS IN HIS INDIVIDUAL**
**CAPACITY, AARON AGEE IN HIS**
**INDIVIDUAL CAPACITY, AND**
**CHARLES HENDERSON IN HIS**
**INDIVIDUAL CAPACITY**

## MUNICIPAL DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff's response in opposition to Chief Henderson and the City of Lexington's (together, "Defendants") motion for judgment on the pleadings paints an entirely different picture than the complaint's factual allegations and the body-camera footage referenced therein. Based on those factual allegations and the referenced body-camera footage, Defendants did not violate Plaintiff's constitutional rights. And even if that were debatable, Plaintiff hasn't attempted to overcome qualified immunity as to Chief Henderson, and she has failed to plead facts upon which she can establish municipal liability. For these reasons, her claims against Defendants fail.[1]

I.      **This Court May Consider the Exhibits to the Rule 12(c) Motion.**

As an initial matter, Plaintiff objects to the exhibits attached to Defendants' motion to dismiss and maintains that it would be "improper" for this Court to consider them. Doc. No. 30, at 25–26. That objection is baseless, for in considering a motion for judgment on the pleadings, a federal court may consider documents or videos referenced by the complaint and central to the

---

[1] Defendants have never argued that Plaintiff's claims are *Heck*-barred. Thus, Plaintiff's response slays a strawman in arguing that this action is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Doc. No. 30, at 4–5.

claims asserted therein.  *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  Indeed, federal courts around the country have considered video footage attached to a defendant's motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) or 12(c).[2]  *See, e.g.*, *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298–1301 (11th Cir. 2024); *Bogie v. Rosenberg*, 705 F.3d 603, 608–09 (7th Cir. 2013); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017); *Rose v. Baltimore Cnty.*, 2024 WL 3924595, at *4 (D. Md. Aug. 23, 2024); *Hicks v. City of Akron*, 2024 WL 732330, at *3 (N.D. Ohio Feb. 22, 2024); *Hanson v. Kwiatkowski*, 2021 WL 4254865, at *4 (E.D. Tenn. Sept. 17, 2021); *Lloyd-Adams v. Kelsch*, 793 F. Supp. 3d 1362, 1368–69 (M.D. Ga. 2025) (relying on video exhibit for "crucial details" where complaint omitted or misstated those details).

The video footage of Plaintiff's encounter with Defendants and the audio recording of her justice-court trial are properly before this Court because Plaintiff refers to the events depicted therein throughout her complaint and those events are central to her claims.  Doc. No. 1, at 8, 10–11.  Plaintiff doesn't contest the materiality of those recordings, nor does she contest that she references the events occurring in either recording throughout her complaint.  Doc. No. 30, at 25–26.  Rather, Plaintiff merely takes issue with the lack of an authenticating affidavit.  *Id.*  But because Plaintiff makes no argument that the exhibits are not, in fact, authentic, her objection is without effect.  *See Borders v. Chase Home Finance LLC*, 2009 WL 1870916, at *4–5 (E.D. La. June 29, 2009) ("[A] technical challenge to the authenticity of a document will not require its exclusion in the absence of a challenge to its *substantive validity*."); *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 811–12 (N.D. Tex. 2009); *see also Brennan v. Aetna Life Ins. Annuity*

---

[2] "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).

*Co.*, 2001 WL 167954, at *5 (N.D. Tex. Jan. 19, 2001). Thus, this Court can (and should) consider the recordings, giving them significant weight where details have been omitted or misstated by the complaint. *See Lloyd-Adams*, 793 F. Supp. 3d at 1368–69.

Courts may also consider at the motion-to-dismiss stage facts subject to judicial notice. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) ("A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and *any judicially noticed facts*." (emphasis added)). This Court may take judicial notice of Plaintiff's public Facebook post in which she declared that "Moments ago, Lexington Judge Marcus Fisher reversed himself and rescinded all of his guilty verdicts against me. This is a rare & extraordinary action. *But don't be mistaken. This only happened because of public pressure.*" Doc. No. 24-3 (emphasis added); *see Boyd v. Canadian Indep. Sch. Dist.*, 2022 WL 837933, at *1 (N.D. Tex. Feb. 17, 2022) (taking judicial notice of plaintiff's social-media post at motion-to-dismiss stage). For those reasons, this Court may appropriately consider the exhibits attached to Defendants' motion to dismiss.

## II.    Plaintiff's Claim Against Chief Henderson Fails.

Plaintiff asserts only one claim against Chief Henderson—that he violated her Fourth Amendment rights by refusing to release her on her own recognizance for failure to pay a thirty-five-dollar processing fee. Doc. No. 30, at 1; Doc. No. 1, at 17. Giving Plaintiff the option of being released on her own recognizance if she paid a processing fee does not violate the Fourth Amendment, for such conduct is neither a search nor a seizure within the meaning of the Fourth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (noting that the Fourth Amendment "covers only 'searches and seizures'").

PD.56543210.2

Attempting to bring her claim under the Fourth Amendment's protection, Plaintiff alleges that her "refusal to pay the processing fee was used to seize [her] and keep her in jail for three days." Doc. No. 30, at 22. But according to the factual allegations of her complaint, Plaintiff had already been seized within the meaning of the Fourth Amendment at the time Chief Henderson allegedly told her she could pay the thirty-five-dollar fee "to be released." Doc. No. 1, at 17. Indeed, Plaintiff had been arrested and transported to the police station prior to being transported to the jail. See Doc. No. 1, at 9. Moreover, as Plaintiff had been arrested by other officers, she cannot show that Chief Henderson was under a constitutional obligation to make his own post-arrest probable-cause assessment and release her from custody. Thus, Plaintiff fails to articulate how Chief Henderson's alleged statement either constituted a seizure of someone already in custody under the Fourth Amendment or how she was entitled to release such that her refusal to satisfy Chief Henderson's alleged condition caused a constitutional injury that she wouldn't have otherwise suffered. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017) ("To be liable under § 1983, [a defendant] must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation."); *see also Alexander v. Smith*, 561 F. App'x 421, 423 (5th Cir. 2014) (per curiam) ("To prevail on a § 1983 claim, the plaintiff must show specific conduct by the officer that gives rise to the constitutional violation." (citing Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002)).

Even if Plaintiff could demonstrate that Chief Henderson violated her Fourth Amendment rights by imposing a thirty-five-dollar processing fee, she has made no attempt to demonstrate that a right to be free from such fees was clearly established at the time. Therefore, Plaintiff has failed to overcome Chief Henderson's assertion of qualified immunity. Focusing on "distinguish[ing] this case from the case law that Defendants cite to support" their motion to dismiss, Doc. No. 30,

at 21, Plaintiff shirks her burden to point to some authority that places the question whether Chief Henderson's alleged conduct violates the Constitution "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate"); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (quotation marks and citations omitted)); *Estate of Joseph v. Bartlett*, 981 F.3d 319, 346 (5th Cir. 2020) ("The Supreme Court strictly enforces the requirement to identify an analogous case and explain the analogy."); *Bustillos v. El Paso Cty. Hosp. Distr.*, 891 F.3d 214, 222 (5th Cir. 2018) (affirming dismissal based on qualified immunity and holding that "Appellant has not carried her burden of pointing this panel to any case that shows, in light of the specific context of this case, that the [defendants'] conduct violated clearly established law"); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (finding that appellants "have not identified a controlling precedent" (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)); *Vann v. Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (holding that plaintiff "cited nary a pre-existing or precedential case" defeating qualified immunity); *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the [Constitution]").

Plaintiff identifies no authoritative precedent placing beyond debate the question whether Chief Henderson's alleged conduct violated the Constitution; rather, Plaintiff merely states that qualified immunity is only an immunity from money damages. But the only relief that she seeks is money damages, so qualified immunity clearly applies here. Doc. No. 1, at 21. And Plaintiff's only argument to the contrary—that Chief Henderson "should have known that" his conduct "was

unconstitutional"—is wholly insufficient to overcome qualified immunity. Doc. No. 30, at 25. Therefore, Plaintiff's claim against Chief Henderson must be dismissed.

### III.    The Complaint's Factual Allegations Cannot Establish Municipal Liability.

To establish municipal liability under § 1983, a plaintiff must plead and prove "three elements:  a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978)).  None of these requirements are met here.  Importantly, Plaintiff's ire is directed at Officer Walters, who indisputably is not a final policymaker.  And it is well established that a municipality cannot be held liable under a theory of *respondeat superior.  Id.*

Indeed, Plaintiff's allegations are insufficient to demonstrate a constitutional violation, let alone that the City held a policy or custom that was the moving force behind any ostensible violation.  Alleging six constitutional violations—(1) false arrest, (2) excessive force, (3) unlawful detention, (4) malicious prosecution, (5) retaliation in violation of the First Amendment, and (6) illegal search of her vehicle and belongings—Plaintiff fails to state a claim against the City for any of those violations.

*False Arrest.*  For starters, Plaintiff maintains that she has sufficiently pled a false-arrest claim because probable cause did not exist at the time of her arrest.  But where the facts are undisputed—as they are under the relevant standard of review—reasonable suspicion and probable cause are legal determinations.  *See United States v. Tompkins*, 130 F.3d 117, 120 (5th Cir. 1997). By Plaintiff's own factual allegations, probable cause existed to arrest her.  Indeed, Plaintiff's allegation that Officers Walters and Agee stopped her as she "drove by the incident one more time, recording [the incident] on her own cellphone" gave them reasonable suspicion to conduct that

- 6 -

traffic stop, as they could see that Plaintiff held her cell phone in a raised position and could reasonably conclude that Plaintiff may have been violating Miss. Code Ann. § 66-33-1.  After initiating that lawful traffic stop, Officers Walters and Agee lawfully ordered Plaintiff to produce her driver's license.  Miss. Code Ann. § 63-1-41.  She failed to promptly do so in response to the officers' first eight requests, and therefore, violated Miss. Code Ann. §§ 63-1-41 and 97-35-7. *Rucker v. Marshall*, 119 F.4th 395, 402 (5th Cir. 2024).  Moreover, Plaintiff resisted arrest by "recoiling" and pulling her arms away from the officers in violation of Miss. Code Ann. §§ 97-35-7 and 97-35-13 as they removed her from the vehicle.  Doc. No. 30, at 13.  Thus, probable cause existed to arrest Plaintiff, and her false-arrest claim fails.  Plaintiff's arguments to the contrary rely on mischaracterizations of the relevant legal inquiry or proceed upon an understanding that is contrary to the body camera footage depicting the relevant events.

*Excessive Force.*  To support her excessive-force claim, Plaintiff points only to allegations that officers "forcefully" or "aggressively handcuffed" her, causing "bruising and scars on her skin that exist to this day."[3]  Doc. No. 1, at 7–8, 12–13; Doc. No. 30, at 14.  Those facts, as a matter of law, are insufficient to state an excessive-force claim.  The Fifth Circuit has held that "handcuffing too tightly, without more, does not amount to excessive force."  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("Tight handcuffing alone, even where a detainee sustains minor injuries, does not present an excessive force claim."); *Tarver v. City of Edna*, 410 F.3d 745, 751–52 (5th Cir. 2005) (rejecting excessive-force challenge based on handcuffing that resulted in "acute contusions of the wrist"

---

[3] To be sure, Plaintiff's complaint also alleges that Officer Walters drew his TASER and pointed it at her.  Doc. No. 1, at 7.  But she doesn't connect that allegation to her excessive-force claim, and she doesn't offer any authority for the proposition that merely pointing a TASER at a disruptive suspect while officers effectuate an arrest violates the Constitution.  *See Harris v. Dobbins*, 2023 WL 2899994, at *17 (S.D. Miss. Apr. 11, 2023).  Moreover, Plaintiff points to no City policy, nor does she allege facts establishing a specific pattern or City custom, which endorses the pointing of a TASER at arrestees.  For those reasons, she has failed to state an excessive-force claim against the City.

and "psychological injury"); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (rejecting excessive-force claim where handcuffing caused "bruises and marks on [plaintiff's] wrists and arms" for which she had to seek medical treatment). And in the rare case where handcuffing may be the basis for an excessive-force claim, the Fifth Circuit requires more than *de minimis* injuries like bruising or scarring to the wrists. *See Deville v. Marcantel*, 567 F.3d 156, 168–69 (5th Cir. 2009) (denying qualified immunity on excessive-force claim where handcuffing led to "long-term nerve damage . . . severe enough to require four surgeries").

Plaintiff points to the Fifth Circuit's decision in *Heitschmidt*, but "[f]ar differently than the brief handcuffing in the present case, Heitschmidt was painfully handcuffed for over four hours, prevented from using the bathroom, and suffered 'serious and permanent' injury from the handcuffing," which caused him to seek medical treatment. *Templeton*, 28 F.4th at 623 (quoting *Heitschmidt v. City of Houston*, 161 F.3d 834, 836, 839–40 (5th Cir. 1998)). In *Heitschmidt*, the Fifth Circuit held that "there was no justification for" leaving Heitschmidt "painfully restrained" for four hours, despite his complaints due to the fact that law enforcement had already secured the premises. *Heitschmidt*, 161 F.3d at 840. But here, Plaintiff's complaint makes no allegation that she remained handcuffed for that long,[4] and it does not allege that she requested that officers loosen the handcuffs once things had settled down on the scene or that the bruising or scarring of which she complains required her to receive medical treatment. For all those reasons, Plaintiff's factual allegations fail to state an excessive-force claim based on handcuffing.

---

[4] In her response to Defendants' motion for judgment on the pleadings, Plaintiff seeks to add an allegation that she remained "handcuffed for hours," but that allegation appears nowhere in her complaint. Doc. No. 30, at 14. Claims and facts that are not asserted in the complaint but only in a response to a dispositive motion are not properly before the Court and should not be considered. *See Hearn v. Deutsche Bank Nat. Tr. Co.*, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014) ("[W]hen considering a motion to dismiss, the Court generally only relies on the allegations made in the pleadings, and does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response.").

Still, even if Plaintiff had pled sufficient facts to state an excessive-force claim under the Fourth Amendment, she has pled no facts by which she may succeed in showing that the City held a policy or custom which was the moving force behind such a constitutional violation. Plaintiff has not pled that the City has an official policy requiring its officers to handcuff arrestees too tightly, and she has not pled a single prior incident of tight handcuffing upon which she might be able to show that the City had a practice of allowing that specific conduct. *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (requiring "sufficiently numerous prior incidents" that share similarity and specificity with the violation alleged by plaintiff). Thus, Plaintiff cannot establish municipal liability as to the City, and her excessive-force claim fails as a matter of law.

*Unlawful Detention.* As explained above and in Defendants' motion to dismiss, Plaintiff fails to state an unlawful-detention claim against the City. Because she has failed to adequately plead a Fourth Amendment violation with regard to the alleged thirty-five-dollar processing fee, she cannot establish municipal liability. Therefore, her unlawful-detention claim against the City must be dismissed.

*Malicious Prosecution.* Plaintiff also fails to adequately plead a malicious-prosecution claim against the City. As explained above and in Defendants' motion to dismiss, probable cause existed to arrest Plaintiff, and thus, her malicious-prosecution claim is doomed. *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023). Even so, her malicious-prosecution claim also fails because her alleged malicious prosecution was set in motion by a warrantless arrest, not by a legal process preceding her seizure. Indeed, Plaintiff herself highlights the difference between an arrest pursuant to a warrant and a warrantless arrest for purposes of a malicious-prosecution claim. Doc. No. 30, at 17 (quoting *Oliveria v. City of Jersey Village*, 2023 WL 2652252, at * (S.D. Tex. March 27, 2023) (dismissing malicious-prosecution claim where alleged malicious prosecution began

with a warrantless arrest)).  Like the plaintiffs in *Oliveria* and *Baker v. Sebastian*, 2023 WL 6393886, at 7 (S.D. Tex. Sept. 30, 2023), and for the reasons given in Defendants' motion to dismiss, Plaintiff fails to state a malicious-prosecution claim against the City.

*First Amendment Retaliation.*  Plaintiff's ability to state a First Amendment retaliation claim hinges upon her ability to state a malicious-prosecution claim.  *See Keenan v. Tejada*, 290 F.3d 252, 260 (5th Cir. 2002) ("[W]e have held that retaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution . . . .").  Because probable cause existed to arrest her and because she was arrested without a warrant, Plaintiff fails to state a malicious-prosecution claim and therefore fails to state a First Amendment retaliation claim.  She also fails to adequately plead facts sufficient to establish municipal liability for the reasons articulated in Defendants' motion to dismiss.

*Illegal Search.*  For the reasons articulated in Defendants' motion to dismiss, Plaintiff fails to state an illegal-search claim.  Speaking from both sides of her mouth, Plaintiff alleges in her complaint that the City had a policy or custom of conducting post-arrest inventory searches of vehicles before having them towed, Doc. No. 1, at 6, but in her response to Defendants' motion to dismiss, Plaintiff avers that Lexington Police Department followed no "standardized procedures for inventory searches." Doc. No. 30, at 15.  If the former is true, the search of Plaintiff's vehicle did not constitute a constitutional violation.  *Florida v. Wells*, 495 U.S. 1, 4 (1990).  If the latter is true, Plaintiff cannot establish municipal liability based on a pattern or custom, as officers did not follow a similar and specific procedure on sufficiently numerous prior occasions.  *Peterson*, 588 F.3d at 850–51.  Either way, Plaintiff fails to state an illegal-search claim against the City.

## CONCLUSION

For those reasons, claims against the City and Chief Henderson should be dismissed.

PD.56543210.2

THIS the 16th day of December 2025.

Respectfully submitted,

PHELPS DUNBAR LLP

BY:  /s/ *Channing J. Curtis*
       G. Todd Butler, MB #102907
       H. David Clark, III, MB #104165
       Channing J. Curtis, MB #106637
       1905 Community Bank Way, Suite 200
       Flowood, Mississippi 39232
       Telephone: 601-352-2300
       Telecopier: 601-360-9777
       Email: todd.butler@phelps.com
       Email: clarkt@phelps.com
       Email: channing.curtis@phelps.com

*Attorneys for Charles Henderson and the City of Lexington*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on December 16, 2025, I had this Memorandum Brief electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.


*/s/ Channing J. Curtis*
Channing J. Curtis

PD.56543210.2